24-2914 Western Arkansas, Abigail Farella et al. v. District Judge A.J. Anglin Ms. Crofts Good afternoon, and may it please the Court. This case is about whether a criminal defendant in Arkansas has a right to counsel during an initial bail determination. Arkansas' answer is no, but the Court need not reach that question because plaintiffs lack standing, and without standing, they cannot represent a class of pretrial detainees. And even if the Court reaches the merits, the District Court erred, ruled 8.1 hearings are not a critical stage, and reversal is independently required because judicial immunity bars the injunction entered here. I'll begin first with standing. Plaintiffs lack standing for at least two reasons. First, as to injury in fact, plaintiffs allege only a completed constitutional injury from past uncounseled bail hearings. Plaintiffs sought an injunction requiring Judge Anglin to appoint counsel at future initial bail hearings. They did not seek damages for the completed alleged injury, nor did they seek release from the detention stemming from it. But to establish standing for such forward-looking relief, the Supreme Court requires that plaintiffs show a real and immediate threat that they would again be subjected to the challenged conduct. Here, that would be another uncounseled initial bail hearing before Judge Anglin. But no such threat exists. Plaintiffs do not appear to allege they will commit more crimes, and again appear before Judge Anglin instead of the other three District Judges in Benton County for another uncounseled initial bail hearing. And second, assuming there is an injury, the relief plaintiffs seek must redress that injury. The Supreme Court is clear that plaintiffs must demonstrate standing for each claim that they press against each defendant and for each form of relief that they seek. But the injunction plaintiffs sought here does not redress their alleged injury. That is, the claimed injury of having an uncounseled initial bail determination hearing that at the time they filed suit they remained detained as a consequence of those initial hearings. But the injunction does not redress that injury. It requires only Judge Anglin to appoint counsel at future hearings. But that's insufficient for at least three reasons. First, plaintiffs do not again allege that they will commit more crimes and again appear before Judge Anglin. Counsel, was this filed as a class action? Yes, Your Honor, this was filed as a class action. And so no member of the class has standing? Yes, that is the State's position, that without standing, a named plaintiff cannot represent the class. And so that is a threshold defect and the Court should not, need not reach the merits. And to the extent that they are arguing ongoing injury, plaintiffs, the ongoing injury plaintiffs allegedly suffered at the time of filing was within their own power to redress. And the injunction they sought did nothing to redress that. And so the mismatch between their claimed injury and requested relief is fatal to standing. And as to redressability, that mismatch is a fatal threshold defect because plaintiffs lack standing for the form of relief that they seek and cannot represent a class and without the irreducible constitutional minimum of standing, this Court should reverse. And plaintiffs fare no better on the merits. Even if this Court reaches the merits. Rule 8.1 hearings are now in a critical stage because the features that foreclose the right to counsel are both present here. First, these proceedings are not adversarial. And second, they're not outcome determinative. But Counsel, on your first point, why does the fact that the defendants are opposing a bond recommendation from the prosecution matter? This case is distinguishable from other cases where there were bond recommendations. But this case is even less adversarial than cases where there were bond cases. For example, the case that we discussed in our briefing, Coleman, there were the trial-like adversarial features that the Supreme Court Is there a bond recommendation from the prosecution? Here, yes. The prosecution offers only a single sentence recommendation as to bond. And Judge Englund, the record is clear, does not have to follow that. And then after he sets bond, he proceeds with indigency and other considerations like that. But to the non-adversarial point, Judge Englund's hearings are required by law to be informal and non-adversarial under Rule 8.3c of the Arkansas Rules of Criminal Procedure. And that's a requirement that he strictly adheres to. And he'll even repeatedly remind criminal defendants of their right to remain silent. And if they want to dispute facts or present evidence or call witnesses and make a record, he will then refer the case to the circuit judge who oversees him to have a court reporter present in more of a formal trial-like format. Do you know if they were subject to being questioned by the judge during the proceeding? The judge does, on this record, ask them questions as to background and employment when he's considering bail and whether or not, the point of these hearings is to determine whether or not bond is required for them to make all of their court appearances. So he does ask them questions, but it is in an informal format. And if they do try to make defenses or arguments, he will remind them of their right to remain silent in the scope of the proceeding. And a key point here as to non-adversarial is that these are not the trial-like confrontations where the arrestee is meeting his adversary because the prosecution is not present and their participation is only limited to that single sentence recommendation that Judge Anglin is missing the key critical stage feature that the Supreme Court identified in cases like Rothbury v. Gillespie and United States v. Guvia because here there is no cross-examination or trial-like testimony allowed, no court reporter or prosecution, etc. And so there's no trial-like confrontation, so that undercuts any argument that this is adversarial. But if we turn to outcome determinative, Judge Anglin's hearings are also not outcome determinative because in Arkansas, the outcome determinative action lies in the bail reduction motion where plaintiffs here, represented by counsel, were free to litigate the question of bail with the circuit judges that supervise Judge Anglin and seek a reduction and subsequent release. Is there a difference between something that's outcome determinative on the one hand and something that derogates from the right to a fair trial on the other hand? Yes. Is it the same standard or is there a difference? Well, there are cases that are helpful to this point because the analysis that the district court undertook was outcome influencing, but the Supreme Court has made clear that it is in his defense, does not present the high probability of harm that was identified as controlling in Coleman. And there, to your point, Your Honor, the outcome of that proceeding was outcome determinative as to trial. In Coleman, if the defendant prevailed, he would not go to trial. And so there, the Supreme Court, so there it was a critical stage. So nothing less than outcome determinative is a critical stage? Correct. And mere outcome influencing is not a critical stage under the case that plaintiffs invoked Gerstein because in Gerstein, the Supreme Court distinguished the Gerstein case from Coleman because there, in Gerstein, it was a probable cause determination. And while the court recognized there were downstream effects, they were not, that may affect the defendant's later ability to aid in his defense, they did not present the high probability of harm that the Supreme Court required as the controlling factor in Coleman. And so here, the inquiry does not turn on the potential effects or even the length of pretrial detention. In Arkansas, as I said before, the initial bail determination is something that courts can revisit. So in that regard, it's actually less dispositive of detention pending trial than probable cause determinations. Because in Arkansas, the probable cause determination cannot be revisited in court. And so Gerstein has already clarified that probable cause determinations are not critical. And Gerstein made clear that they were not sufficiently adversarial or outcome determinatives to be critical. And this case is even easier than Gerstein because there, the decision could control confinement during the duration of the case for non-bailable offenses. Here, they could move for bond reduction and had access once they were appointed counsel to the ordinary state procedures for reducing bail, but they did not. And so on this record, Rule 8.1 hearings do not meet the first prong. They're not adversarial. They're not trial-like. And they're not outcome determinative. So this court should find that they're not a critical stage. And even setting aside the standing defects at the threshold, the requested relief cannot and does not redress the specific alleged injury here. And if we turn to scope of relief, I'd like to make another point. Counsel, question. You're talking about a bail, you've used the term bail hearing. Yes. And that's used in this case. Is that, when we're talking about bail hearing in the context of this case, is that the, is that the same thing, another name for the pretrial release inquiry that is mentioned in the Arkansas Rules of Criminal Procedure? That is my understanding, Your Honor. But an important note is that different counties in Arkansas have different formats and different requirements. And the facts before the court today are that this proceeding be non-adversarial under Rule 8.1, whereas other states, these proceedings may look differently. Well, I guess I'm trying to identify, Rule 8.5 says the pretrial release inquiry shall be conducted by the judicial officer prior to or at the first appearance of the defendant. So I'm just trying to identify, make sure our terminology is correct. Yes, my understanding. As to what we're talking about, are we talking about the pretrial release inquiry under the rules or are we talking about the first appearance? My understanding is that before Judge Englund, they are one and the same and there are different components and different steps to that, including the probable cause determination, whether or not they, the prosecution has stated enough for them to even be in custody. And then the court will also proceed with setting bail and questioning the arrestee as to if they want an attorney and if they qualify as indigent. So we're really talking about the first appearance under Rule 8.3? That is my understanding, but I can clarify and return a more wholesome answer to you on rebuttal. I mean, the first appearance is, there's not much required at the first appearance. Inform the defendant of the charge, inform that he's not required to say anything, that anything he says can be used against him, that he has a right to counsel. Yes, Your Honor. That he can communicate with counsel, family, and friends. Yes, Your Honor. And during these proceedings, that is exactly what Judge Englund does. He informs them of their charges and the scope of that informal, non-adversarial proceeding and explains to them that they shouldn't be calling witnesses. And if they do try to seek family members to speak on their behalf, he closely polices the non-adversarial nature and requirement of his proceedings. I have another question. You mentioned there are three other, Judge Englund is a district judge? Yes, Your Honor. You mentioned there are three other district judges? Yes. In Benton County? Yes. They are each elected and they rotate on a weekly schedule. Well, do the other three conduct these proceedings in the same way as Judge Englund? That's not, I don't, I'm not sure on the record before us if the record is clear as to how other judges conduct their proceedings. But what is clear is that the main point of distinguishing the legal question before the court is the main feature that's missing from how they conduct their hearings and how Judge Englund conducts his hearings is that he now has a federal permit injunction requiring a public defender at all of these moving forward for all criminal defendants. And that is not... Is your understanding that that injunction only is as to Judge Englund? Yes. Yes, Your Honor. That is only to Judge Englund. Well, I ask the question about whether the other judges do this the same way because I think I saw on the record that Judge Englund conducts these at 6 a.m. in the morning. Yes, Your Honor. And that is an important fact, I think, for us to look at because the reality is that the district court's injunction is not necessarily the rosy picture that plaintiffs paint because without the procedural protections and the things that Judge Englund does, the district court's injunction is that if we add more public defenders and more people to these, there's going to be more scheduling and administrability concerns, whereas the record is clear that without the injunction, Judge Englund arrives early. He holds these seven days a week. He reads every word, line by line, of the probable cause affidavits. And he does all of this, and the record is clear. I can point you to Joint Appendix 101 through 103, that he does this to allow defendants to get out of jail as relevant earlier and to not conflict with other proceedings and schedule things during the day. And so he also does this because if indigent, they're able to meet with their appointed counsel quicker because on the record, it's clear that as soon as Judge Englund finds someone indigent and appoints them a public defender, that public defender is notified of the appointment and at that point, the arrestee can meet with their public defender and pursue bond determination, redetermination. And my last question is, is it your understanding that as a result of the injunction, that the procedure that's required at Benton County has more elements or is more intensive than what is required under the Arkansas Rules of Criminal Procedure? I'm not sure the record is clear on that, but what is clear is that only Judge Englund has a federal court order requiring that public defenders be appointed in each one of these hearings moving forward. And an important consideration as to administrability is the fact that he conducts 18 to 20 of these per day, seven days a week. And so there are, while there certainly are downstream considerations, if we set aside some of those policy considerations, it's very clear that pretrial detention may affect the defendant's ability to assist in the preparation of his defense, but any collateral effect does not necessarily create that high probability of substantial harm. And so here, given the redressability concerns and the fact that there's a mismatch between the requested relief and the injury pled, there are some clear merits concerns and standing defects. And if we set those aside, I'd like to point this court to the scope of relief issues that we addressed in our reply. It's our position that the district court awarded prospective relief that's barred by judicial immunity because Judge Englund is a state officer working in his judicial capacity, and there's no evidence that he violated a declaratory decree, and the district court's own grant of declaratory relief confirms that that was available. And to the extent the district court's declaratory relief was retrospective, this court made clear that that is forbidden under Justice Network v. Craighead County. And I see that I'm running out of time, and I reserve the remaining time for rebuttal. Good afternoon, Your Honor. May it please the court. Cody Cahill for plaintiffs, Abigail Ferrella and Logan Murphy. Your Honor, the state's position in this case is that a criminal defendant who has just spent at least one night in jail, who has no formal legal training, who's just been informed of the charges against her, who knows nothing about the Arkansas rules of criminal procedure, knows nothing about the factors relevant to bail determinations and pretrial release, and who has just been admonished of her right to remain silent, can be required to stand alone against the state before a court without counsel while that court determines if she can be deprived of her liberty for the duration of her case. And what's more- Well, wait a minute. Is it really for the duration? Can't she file a bond reduction after that? Presumptively, it is for the duration. Now, Your Honor, it is true that defendants can file bond reduction motions, but I have a few points to make about the state's use of that. For one, there's no rule that provides for some freestanding right to file those motions or to have courts consider them at any particular time. The only rule that does speak to timing, which the state cited, is Rule 8.6, but that only says that if the prosecution has not brought an information within 60 days, then the court must reconsider bail. But that means that- and we said this in our response brief and the state has never disputed it- that defendants are routinely kept pursuant to the initial bail determination for at least 30 to 60 days. So in this case, for instance, the arraignment was set for- typically set for about a month out, and that is the next opportunity to see a judge. And these bail reduction motions are never heard before that happens. And so we're talking- and for someone like Abby Ferrella, that is her entire case. She's ultimately sentenced to a time served of 38 days. And so the bail reduction motion is simply not a replacement. Would you address standing? How is this possibly redressable to your clients? Yes, Your Honor. I'll start just with injury in fact, if you don't mind, because I know the state started there. And this case is totally different from mine. It's because the plaintiffs, at the moment they filed their complaint, were sitting in jail. They were experiencing an ongoing injury as a result of what they contend was an unconstitutionally conducted bail hearing without counsel. But moving on to redressability, that injury was redressable at the moment that they filed their complaint because they could have then sought an immediate de novo 8.1 determination before Judge Anglin. If they had a declaration saying, as they sought, that Judge Anglin must provide counsel at his bail hearings, then they could have gone to Judge Anglin and gotten a new hearing the next day. Whereas, again, to contrast this with a bail reduction motion, even if their appointed counsel had filed a bail reduction motion that afternoon, there's no reason to believe that that would be determined until at least 30 to 60 days later. And there's no intervening preliminary hearing that the defendant can ask for in that time. So a defendant is stuck in jail after that bail hearing, presumptively. I'd also briefly address mootness, although the state doesn't bring it up today. This is the kind of case that, under Gerstein and under County of Riverside against McLaughlin, is capable of repetition yet evading review and is inherently transitory because no plaintiff is going to be in a pretrial detention situation and will have that live injury for the duration of the entire case. Now, I'd like to move on to the merits, unless the Court has more questions about standing. And I want to start out by stressing three ways in which these hearings are not only immensely consequential but are critical stages. The first thing is that, obviously, we're talking about the deprivation of someone's liberty, certainly for months, but potentially for the entirety of their cases. Without counsel, that can happen to a defendant unjustifiably and completely needlessly, along with all the human harm that comes along with that. Moreover, because the rules by their terms require the Court to go through an inquiry of multiple factors, eight to ten factors, that only the defendant can provide, asking information about the defendant that only the defendant can provide, there is a significant risk in these hearings that defendants will incriminate themselves. And that's a risk that Judge Anglin himself acknowledged at page 112 of the appendix in his deposition. He said he has to routinely remind people that they have the right to remain silent, they don't have to answer his questions, because people will give him information in response to his questions that they might think is helpful but that is really going to harm their case. That's sort of the fundamental cognitive dissonance in these hearings, that you have a judge on the one hand reading Miranda warnings, but then who's required under the rules to seek out information from you. And that system really only makes sense when the defendant can speak through counsel who can answer carefully and ensure that they're not incriminating themselves. This may be irrelevant, but it's been a long time since I've done it. But back when I was a Federal prosecutor, it was sort of routine at an initial appearance for a magistrate judge, frequently the AUSAs were there, without a defense lawyer to do the bond hearing and ask background questions and things like that, staying away from the merits of the underlying case. It seems to me that that's a, I think, a pretty well settled way of handling these sort of initial appearance issues. Well, Your Honor, I don't want to dispute your recollection. My understanding, at least, and we may be talking about different proceedings here, but my understanding is that under the Bail Reform Act, at least, when there are the preliminary hearings where bail is set, counsel is required for the defendant at those hearings. And in fact, that's one of the reasons that the court It may have changed. You might be right. It may have changed since when I was, but when I was doing them, there was no defense lawyer there for at least the preliminary setting of the bail. I see. Well, here, my, again, I'm thinking of the hearing that was addressed in, by the Supreme Court in Salerno. And there, the court specifically called out the fact that defense is required, defense counsel is required as a reason to uphold the law. Let me ask you this. How do you get around Gerstein? Yes, Your Honor. There's at least three things I'd like to say in response to Gerstein. The first is, think about the substance of what's being determined in Gerstein. It's just probable cause. The court was very clear about that. And probable cause, the court said in Gerstein itself, is a kind of informal, non-technical, factual assessment that everyday people make. It's not about legal technicalities. Now think about what we have in this hearing. We have a set of eight to ten factors, and among those factors is the strength of the case against the defendant, the likelihood of conviction, mitigating and aggravating factors, and the likely sentence. That's under Rule 8.5 sub 6 and 9.2 sub 8. That is an inquiry that a criminal defendant, acting alone, is completely incapable of getting into. They, they, again, they've just been told of the charge against them. So that is a technicality. It's a preview of the merits of the case. And it's something that the prosecution, through its recommendation, has an opportunity to address, and a defendant without counsel has no opportunity to address. The other important point I want to make about Gerstein is that, remember that procedurally there, the court was asking, what is an appropriate substitute hearing for a probable cause determination made to get an arrest warrant? We're talking about people who are arrested without a warrant, and so does the Fourth Amendment require some substitute for them when, that they would have gotten when the police went before the magistrate? And so naturally, under that situation, there's no right to counsel because there's no right for the defendant even to be present. And that's all the circuits that I'm aware of have held that there's no right to be present for a Gerstein hearing. Here, by contrast, the defendant must be present. They're brought before Judge Anglin. They're read their rights, informed of the charge, and then Judge Anglin engages in a colloquy with them about all of the factors laid out in, in Rules 8.5 and 9.2. So that's another important difference. A third important difference from Gerstein is, of course, that Gerstein dealt only with the probable cause determination and actually refers to the possibility of later, the presumptive possibility of a later bail hearing. That means that a bail hearing here can affect the defendant's liberty for a far longer period of time than the, the Gerstein hearing standing alone. Would you agree that as a result of the injunction in this case, Judge Anglin's court is the only, is the only district court in the state of Arkansas in which, where an attorney is required to be present? The injunct- At this phase? Yes, Judge Shepherd. The, the injunction only binds Judge Anglin, but I will say he's not the only courtroom where there are counsel at these hearings. I said required. Absolutely, yes. And I understand. And, and that is true as a matter of- And that's because the Arkansas Rules of Criminal Procedure do not require the presence of counsel, right? By their terms, they require the appointment of counsel at the end of the hearing, but- I said presence of counsel. What Judge, what Judge Brooks ordered here- I don't, I don't disagree, Your Honor. He said, must ensure that indigent defendants are represented by appointed counsel at Judge Anglin's Rule 8.1 hearing- Yes, sir. That's not required in the Arkansas Rules of Criminal Procedure. No, it's not. But the, our position is that the Sixth Amendment does require them because these hearings, or at least the bail determination and pretrial release portions of the hearings should be understood as a critical stage. And so, therefore, counsel should be required. And I, I was starting to say earlier, Your Honor, that counsel does attend these hearings in other counties. If you go 30 miles to the south to Washington County, you see that these hearings operate incredibly smoothly and effectively with the public defender there, stepping in to prevent their defendants from incriminating themselves, explaining to the court when the defendant has a mental disability or can't speak English or can't communicate effectively. And that just underscores, I think, both the service that defense counsel provides in these hearings, which is substantial, but also that it, this is something that can be done. And further, I know the State was worried about administrability. The Rules 8.7 provides for virtual appearances. That is a degree of flexibility that could enable the provision of counsel. And more fundamentally, from Gideon on down, the Court has never hesitated to say that something is a critical stage merely because it might require some administrative rethinking. Every recognition of a critical stage, by definition, requires that. Now, the State also said that these aren't sufficiently adversarial. And I know you asked about that a little bit, Judge Grass. And I think I would quibble both with the supposition that adversarialness, at least as the State understands it, is required, but also I would say these are adversarial hearings in any relevant sense. So the State seems to be suggesting that they must be adversarial either in the form of the presence of the prosecutor or in the form of cross-examination and witnesses. But we know that can't be right because United States v. Wade, which is the police lineup, there's no prosecutor present there. There's no cross-examination or witnesses there. The defendant just has to stand there and look like the defendants. They're not even asked any questions. Here, of course, that's quite different. We also know it through Messiah, which is the uncounseled interrogation by an informant case. There's no prosecutor present at that. That, my understanding, is in Messiah. That was directed by the police officers. And, of course, that's much less formal than this. So the kind of like formal adversarial process that the State is suggesting is not required. But, again, in any relevant sense, the State is participating here. They are providing a recommendation, as the rules require. They're required under, I believe it's 8.3, to provide a basis for determining bails, to decide whether or not the defendant should be held, to recommend whether or not the defendant should be held, and to recommend any applicable conditions. And that comes in the context of a multi-page affidavit of probable cause where the State or its agents is providing an account of the crime. It's providing the basis for probable cause. It's providing the criminal history of the defendants. And then it is providing a recommendation. And, again, if a judge, Judge Anglin testified that he doesn't always follow the State's recommendation, and that's good that he's exercising independent judgment there. But you can appreciate, I'm sure, that if a judge is presented with one multi-page well-reasoned explanation for why bail should be set at $20,000 or if released on conditions, the following conditions should apply, versus nothing, which is effectively what judges can get when there's no counsel involved. Another point I would like to make, Your Honor, is the State's outcome determinative point. That, again, is not something that the Supreme Court has ever held as a requirement of a critical stage. And, again, we know that because in any given police lineup, there might not even be an identification of the defendant. So those are not by definition outcome determinative either. What the Court has said is that we ask whether this is a stage where the risk of substantial prejudice to the defendant's right adheres and counsel could do something about that prejudice. That's Coleman. Or we ask are they confronted with the procedural system, their expert adversary, or both. That's Ash. That perfectly describes the kind of hearing that we're dealing with under these circumstances. And you were asking, Judge Shepard, about how these rules apply in other courtrooms. It's true that the record here only reflects in great detail how Judge Anglin conducts these hearings. But Judge Anglin testified, and we believe it's accurate to say that he follows the rules as they're set out. And so that would mean that we expect that other judges following the rules will similarly go through all of the factors laid out in But I just want to stress that we do have a limited position here. We're not asking the Court to rule that all bail hearings at all times are necessarily critical stages. We take Arkansas' rules as we find them. We take the process that Judge Anglin described, including all the risks of self-incrimination and the stakes of liberty as we find them. And we say that hearing is a critical stage. If there are no further questions, Your Honor, I'll leave the rest of my time. Thank you. May it please the Court. Letitia Collins, whose case appears in the record at 493, was mentally ill, homeless, and seven months pregnant when she appeared alone in front of Judge Anglin. She'd been arrested down the road in Washington County. She'd have had a lawyer. But as it was, she didn't. And as a result, there was no one to make an appeal for appropriate medical care for her and the unborn child. There was no one to move for a competency proceeding, which under Arkansas law at the time would have immediately halted the criminal proceedings. Now, she's one example of two things I'm going to talk about, why this is a critical stage. But I do want to stress that it's a critical stage where it is feasible and administrable to provide counseling. Washington County does it. It's allowed by video. We can talk more about that if the Court is interested. But right now, I want to focus, because I only have five minutes, on two factors in the bail inquiry under 9-2 and one other case in the record that I think illustrates why this is a critical stage. Israel Del Rio, he's at 391 in the appellate record, was arrested for two misdemeanors. One was a battery. Battery third, under Arkansas law, requires bodily injury. And the prosecution and the police had a conversation after the arrest. And in consultation with the prosecution, police changed their minds. Prosecutor told them, go ahead, charge it as a felony battery. Now, 9-2 has many factors that a judge is supposed to consider. But one of them is the severity of the possible punishment. With the decision to move from a misdemeanor to a felony, they increased the possible punishment from one year to six, a 500 percent increase. That's a strategic legal decision made by the organized forces of the State and then presented to Judge Anglin while Mr. Del Rio stood alone. But that's not the only way in which it was a critical stage. The rule also requires that the Court consider the likelihood of conviction. So again, Mr. Del Rio's case. The misdemeanor battery was based on a cut lip and a sore and swollen knee. Why was it enhanced to a felony battery? Because Mr. Del Rio spoke to police and he said, you know, my knee still hurts. I'm going to go see a doctor because maybe I might possibly have torn my ACL. Based solely on that speculation by a layperson, no doctor's visit or anything, they increased it to the battery felony. That clears a probable cause hurdle. But as to the likelihood of conviction, had a lawyer been there, any lawyer experienced with Arkansas law would have known that serious bodily injury is a statutorily defined term and the likelihood of conviction on that maximum six-year felony was virtually none on the evidence before the Court because there was virtually no likelihood of a finding of that essential element of serious bodily injury. I'll add as well that there were sentencing impacts. Arkansas has a voluntary sentencing guideline system. It looks a little bit like the federal sentencing guideline system. Mitigating and aggravating factors under those circumstances, how could Mr. Del Rio possibly have argued it? Now the Court asked about self-incrimination. I will give one example, not from the record, but from my own experience. There are lots of people who come into court having been arrested while there's a protective order outstanding. And when a judge says, where do you live? They might want to give the address where they're staying, a cousin's house on the couch, or they might be tempted to give the address they've given all their life, where their mail goes, this is where I live. If they're being arrested for a violation of a protective order, that's self-incriminating. Now I want to turn to one last point that applies to really all the of the class. The undisputed facts below, and it was stipulated by the separate defendants, are that the only bond modifications happen after the filing of an information. There's no preliminary hearing, and of course, there's no grand jury. Is there anything in the record that would support your argument on this self-incrimination? Anything that the State subsequently used statements at a bond hearing? Your Honor, we don't have any subsequent records from these defendants. All we have are a hand-picked group that Judge Englund presented as exhibits with his deposition. Any situation at all where a statement was used by a statement at a bond hearing was used by the State subsequently in the prosecution? Again, there may well be. We can go back and look. We don't have those in the appellate record, so I did not look beyond the record. I'm happy to review them if you'd like. But there's nothing in the record like that? Nothing in the record like that, Your Honor, because the record only reflects the paperwork in front of Judge Englund that day. If the Court would like, we can file a supplemental briefing on that. May I conclude? Quickly. I'll do it. My point is this. In Arkansas, what happens is you have an initial bail hearing, there's no preliminary hearing, and then 60 days later at the outside, the prosecution files an information. And as stipulated, appendix page 320, it may be several months before an arraignment and a bail hearing happens. In other words, this is a critical stage not merely because you're confronting the organized forces of the State, not merely because you need the guiding hand of counsel, but because it has devastating impacts on liberty. That's enough time to lose your job, to lose your home, or if you're Ms. Metzger. I'll respond briefly to correct three points just raised. The relevant framework for this Court to apply is not the length of pretrial detention. And the dispositive facts that the Court looked at in Coleman and Gerstein went to outcome determinative. In Gerstein, the outcome of the case could control detention through trial. That is not necessarily the fact here. Plaintiffs had available to them the normal bail revisitation procedures. And in Coleman, there, if the defendant prevailed, there would not be any trial at all. And second, as to standing, we are in Lyons and not County of Riverside, and any attempt to reframe injury as continuing must fail because to avoid the standing defect identified by the Supreme Court in Lyons, that case Lyons turned not on the continuing effects that we have heard about of the past injury, and there it was a chokehold, but rather the speculative nature that the plaintiff again would be subjected to the same challenge conduct in the future. And as to mootness, to the extent that plaintiffs invoke inherently transitory as an exception to mootness, our position is the Court need not reach mootness because of the injury in fact and addressability defects. And I would like to point the Court to Joint Appendix 109, 131 through 32. Judge Shepard raised a question about whether or not Judge Anglin conducts the defenses and charges and asks limited questions about employment. And the Court has heard a lot about empirical studies and downstream effects, but regardless of those policy considerations, those mere effects do not transform the legal question here. They do not transform these determinations into a critical stage. And I can point the Court to Gerstein for that. So this Court can and should reverse the District Court on standing, merits, and scope of relief. And if the Court has no further questions, I ask that you reverse the District Court's decision and remand with instructions to enter summary judgment in favor of Judge Anglin. Thank you. Thank you, Counsel. The Court appreciates all counsel's appearance and arguments. The case has been well argued and we wish you an opinion in due course.